**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| E.D.Q.C., | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Case No. 4:25-cv-50-CDL-AGH |
| | : | 28 U.S.C. § 2241 |
| Warden, STEWART DETENTION | : | |
| CENTER, *et al.*, | : | |
| | : | |
| Respondents.[1] | : | |

## ORDER

Pending before the Court are Respondents' amended motion to dismiss (ECF No. 27) and Petitioner's motion for expedited jurisdictional discovery (ECF No. 28). Because the Court concludes that jurisdictional discovery is necessary and appropriate, it defers issuing a recommendation on Respondents' motion to dismiss until after such discovery is complete. Further, the Court grants Petitioner's motion for expedited jurisdictional discovery, though it limits the scope of such discovery as explained herein.

## PROCEDURAL BACKGROUND

The Court received Petitioner's *pro se* petition for a writ of habeas corpus on February 10, 2025 (ECF No. 1). At the time Petitioner—a Venezuelan citizen—filed his petition, he was detained at Stewart Detention Center ("SDC") in Lumpkin,

---

[1] Pursuant to the Court's standard policy in immigration detention cases, Petitioner is identified by his initials. When the Court received Petitioner's original habeas petition, it misconstrued his surname and given name and identified him as Q.C.E. The Court has amended the caption to properly reflect his given and surnames, and the Clerk is directed to amend the docket accordingly.

Georgia, which is within the jurisdiction of the Court.  Pet. 1, ECF No. 1; *see* 28 U.S.C. § 90(b)(3) (providing that Stewart County, Georgia lies within the Columbus Division of the United States District Court for the Middle District of Georgia).  Petitioner identified the Warden of Stewart Detention Center as the sole respondent, and his requested relief was release from detention.  Pet. 1, 7.  On March 20, 2025, the Warden moved to dismiss the petition, contending that Petitioner was removed to El Salvador on March 15, 2025, and therefore, his petition was moot.  Resp't's Mot. to Dismiss 2, ECF No. 10.  Because of the "unique and complex jurisdictional issues" involved, the Court appointed *pro bono* counsel for Petitioner.  Order 1, Apr. 8, 2025, ECF No. 12.

On April 17, 2025, newly appointed counsel filed an amended petition on Petitioner's behalf, adding multiple government officials as respondents.  Am. Pet. ¶¶ 22-27, ECF No. 24.  According to the amended petition, Petitioner was transported to El Salvador on March 15, 2025, and immediately placed in the Centro de Confinamiento del Terrorismo, The Terrorism Confinement Center ("CECOT") in Tecoluca, El Salvador "at the request and expense of Respondents."  *Id.* ¶¶ 1, 58-59.  In his prayer for relief, Petitioner requests, *inter alia*, that the Court order "Respondents to immediately release [Petitioner] from their custody and facilitate and effectuate his prompt return and release into the United States or facilitate and effectuate his prompt removal and release to Venezuela."  Am. Pet. at 33.

On May 2, 2025, Respondents filed an amended motion to dismiss the amended petition, raising three grounds: (1) the Court lacks jurisdiction to grant habeas relief

because it is barred by the Immigration and Nationality Act ("INA"), as amended by the REAL ID Act of 2005 ("REAL ID Act"), Pub. L. No. 109-13, 119 Stat. 231, § 106, 8 U.S.C. § 1252, and because Petitioner is not in United States custody; (2) the Court cannot order the transfer of Petitioner from a foreign sovereign; and (3) the Court should dismiss or stay proceeding pending the resolution of a class action pending in the United States District Court for the District of Massachusetts, *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-10676-BEM (D. Mass. Mar. 23, 2025).[2]  Resp'ts' Am. Mot. to Dismiss 7-20, ECF No. 27.

On May 5, 2025, Petitioner moved for expedited jurisdictional discovery to address whether—as alleged by Respondents—Petitioner is no longer in Respondents' custody and whether the Court can provide meaningful relief on his petition.  Pet'r's Mot. for Disc. 3, ECF No 28.  Petitioner responded to the amended motion to dismiss on May 9, 2025, arguing that: (1) the INA does not bar the Court's review of his petition; (2) the Court retains Article III jurisdiction because jurisdiction vested at the time Petitioner filed his petition, Petitioner remains in Respondents' constructive custody, and because the Court can provide meaningful relief; and (3) the case should not be stayed pending resolution of *D.V.D.*  Pet'r's Resp. to Am. Mot. to Dismiss 4-20, ECF No. 31.  Respondents filed a combined reply to the motion to dismiss and opposition to jurisdictional discovery on May 15, 2025 (ECF No. 32).

---

[2]  Unlike cases involving other Venezuelans transported to El Salvador, Respondents do not allege that Petitioner was removed under the Alien Enemies Act, 50 U.S.C. § 21.  Instead, they allege that he was removed pursuant to a final order of removal.  Resp'ts' Am. Mot. to Dismiss 3, ECF No. 27.

## DISCUSSION

As noted, there are currently two pending motions before the Court: Respondents' amended motion to dismiss and Petitioner's motion for jurisdictional discovery.  Prior to making a recommendation on Respondents' motion to dismiss, the Court must first decide whether jurisdictional discovery is necessary and appropriate. Respondents contend that it is not because: (1) the Court should dismiss or stay proceedings pending resolution of *D.V.D.*; and (2) the Court lacks jurisdiction to consider Petitioner's habeas petition because he has been removed and is no longer in United States Custody.  Resp'ts' Reply 2-11, ECF No. 32.  Because the Court concludes that the INA does not bar judicial review of Petitioner's claims and because the issue of custody requires discovery, the Court defers making a recommendation on Respondents' amended motion to dismiss pending completion of discovery as provided herein.  The Court also finds that a stay in this case pending resolution of *D.V.D.* is not appropriate.

## I.    The INA Does Not Bar Judicial Review of Petitioner's Claims

The INA limits a court's jurisdiction to review the removal process.  Under 8 U.S.C. § 1252(a)(5), "an order of removal entered or issued under any provision of this chapter[]" may be reviewed only by a court of appeals upon a non-citizen's filing of a petition for review with that court.  8 U.S.C. § 1252(a)(5).  Such review of a removal order by the court of appeals encompasses "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the

United States[.]" 8 U.S.C. § 1252(b)(9). Additionally, under the INA "no court [has] jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

Respondents assert that these provisions strip the Court of jurisdiction to consider Petitioner's habeas claims. Resp'ts' Am. Mot. to Dismiss 7-11. They contend that Petitioner's claims are barred by § 1252(g) because it "challenges the execution of his removal order." *Id.* at 7. They also argue the Petitioner's claims are barred from review by *this* Court because 8 U.S.C. § 1252(a)(5) and (b)(9) "channel all challenges to removal orders and removal proceedings to the Court of Appeals." *Id.* at 10.

None of these provisions bar judicial review of Petitioner's claims. First, as Petitioner points out, he is not challenging "his removability, removal order, or removal" but "his unlawful detention 'under or by color of the authority of the United States.'" Pet'r's Resp. to Am. Mot. to Dismiss 4 (quoting 28 U.S.C. § 2241)). Challenges to such unlawful detention are not barred by the INA. *See Jennings v. Rodriguez*, 583 U.S. 281, 292-95 (2018) (holding that § 1252(b)(9) did not bar a challenge to detention without a bond hearing); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (holding that § 1252(g) does not bar a challenge to "detention and impending removal"). Whether Petitioner is detained "under or by color of the authority of the United States" is related to the issue of whether he is in

5

Respondents' custody despite his transfer to El Salvador, which, as discussed below, is an issue that will require discovery.

Second, the Court questions whether a removal order has actually been executed or even in the process of being executed. Certainly, there is no dispute that Petitioner is no longer physically in the country, but whether that constitutes removal as contemplated by the INA is another matter. As pointed out by Petitioner, removal as discussed in the case law typically entails an alien arriving in the recipient country and the "shackles" being removed. Pet'r's Reply 1 n.1, ECF No. 35. Here, it is alleged that upon his arrival in El Salvador, Petitioner was "stripped and shackled" and taken directly to CECOT. Am. Pet. ¶¶ 6-7. Granted, there may be circumstances where a removed alien is subject to detention in the recipient country because of his or her violation of that nation's laws. But that does not appear to be the case here because according to Petitioner, he has never previously been to El Salvador and has no connection to that country other than that is where Respondents decided to send him. Am. Pet. ¶ 48. Thus, whether Petitioner's transfer to El Salvador constitutes execution of a removal order as opposed to Respondents simply farming out responsibility for pre-removal detention to a foreign country is yet to be determined and, again, is interrelated to the issue of whether Petitioner remains in Respondents' custody.

Third, while § 1252(g) "bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions." *Madu*, 470 F.3d

6

at 1368 (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999)).  Here, Petitioner's removal order provides that "Respondent shall be removed to Venezuela. or in the alternative to on the charge(s) contained in the Notice to Appear."  Resp't's Mot. to Dismiss Ex. B, at 1, ECF No. 10-2.  The only country mentioned in the NTA is Venezuela.  Am. Pet. Ex. 4, at 2, ECF No. 24-7.  The INA allows for third-country removals, including removal to "another country whose government will accept the alien into that country."  8 U.S.C. § 1231(b)(2)(E)(vii).  However, as recently discussed by the district court in *D.V.D.*, an alien must be given notice prior to removal to a third country and an opportunity to seek withholding of removal to that country under 8 U.S.C. § 1231(b)(3) and the Convention Against Torture ("CAT").  *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-10676-BEM, -- F. Supp. 3d--,  2025 WL 1142968, at *19-22 (D. Mass. Apr. 18, 2025).  According to Petitioner, he received no such notice or opportunity.  Am. Pet. ¶¶ 47, 89, 91.  If such allegations are true, then Petitioner's transfer and placement in CECOT was likely unlawful.[3]  As the district court has done in *D.V.D.*, this Court "will not construe section 1252(g) to immunize an unlawful practice from judicial review."  *D.V.D.*, 2025 WL 1142968, at 10.  Therefore, Respondents may not rely on § 1252(g) to bar review of Petitioner's challenge to his ongoing detention.

---

[3] *Camarena v. Director, Immigration and Customs Enforcement*, 988 F.3d 1268 (11th Cir. 2021) does not demand a contrary finding.  In that case the petitioners sought to block their removal pursuant to valid, statutorily authorized removal orders based on their pending applications for discretionary unlawful presence waivers.  *Camarena*, 988 F.3d at 1272-73.  Here, in contrast, Petitioner has alleged facts showing his removal was not pursuant to his removal order—which by its express terms only authorized removal to Venezuela—and was in violation of non-discretionary, required notice prior to removal to a third-country.

## II.    The Issue of Custody Requires Discovery

In their motion to dismiss, Respondents argue that Petitioner cannot maintain this habeas action because he is not in United States custody.  Resp'ts' Am. Mot. to Dismiss 11-13.  They also argue discovery is not "warranted" on this ground because "this Court lacks jurisdiction where Petitioner has been removed from the United States."  Resp'ts' Reply 6.  This argument appears circular at first glance, but if the Court understands Respondents' position correctly, they contend that where a petitioner has been removed from the United States to a third country, there can be *no* circumstances—absent absolute United States control over the detention site— under which he or she can be deemed to still be in United States custody.

The Court does not agree that "custody" for purposes of 28 U.S.C. § 2241 is so limited.  Instead, the Court agrees with the United States District Court for the District of Columbia that the detention of aliens such as Petitioner at CECOT potentially implicates the "concept of constructive custody."  *J.G.G. v. Trump*, No. 25-766 (JEB), --F. Supp. 3d--, 2025 WL 1349496, at *2 (D.D.C. May 8, 2025) (internal quotation marks omitted).   "[C]onstructive custody exists whenever 'the imprisoning sovereign is the respondent's agent,' the prisoner's 'liberty is restrained by the respondent's parole conditions,' or the prisoner 'can point to some continuing collateral disability which is the result of the respondent's action.'"  *Id.* (quoting *Steinberg v. Police Ct. of Albany*, 610 F.2d 449, 453 (6th Cir. 1979)).  "As a result, when a 'respondent official works through an intermediary or an agent to detain' someone, that prisoner may bring a habeas petition against the respondent."  *Id.*

(quoting *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 48 (D.D.C. 2004)).

Here, Petitioner alleges sufficient facts to warrant discovery on the issue of whether Petitioner is within the constructive custody of the United States. For example, Petitioner claims the following: that the United States is paying El Salvador six million dollars to detain aliens such as Petitioner (Am. Pet. ¶¶ 55-56); that the term of the agreement for such detention is one year, "pending the United States' decision on their long term disposition" (Am. Pet. ¶ 57 n.13); that a statement by Respondent Secretary of State Marco Rubio states that such detention of aliens would "save our taxpayer dollars" (Am. Pet. ¶ 55); that statements made by Respondent Noem, the Secretary of the Department of Homeland Security, during a tour of CECOT confirm that the "facility is one of the tools in our toolkit that we will use if you commit crimes against the American people" (Am. Pet. ¶ 64); that a statement by the President of El Salvador confirms that El Salvador "offered the United States of America the opportunity to outsource part of its prison system" (Am. Pet. ¶ 54); and that a statement made by the Vice President of El Salvador shows that El Salvador was holding Kilmar Abrego Garcia—another alien removed from the United States to El Salvador—at CECOT because "the Trump administration is paying El Salvador, the government of El Salvador," to keep him there (Am. Pet. ¶ 67).

Further, in response to Respondents' amended motion to dismiss, Petitioner presented a statement by the El Salvadoran Vice President that it offers to hold inmates of other countries and that "[t]he status of inmates or the person arriving isn't determined by El Salvador; it is determined by the state that requests the

service." Pet'r's Ex. 1, at 13, ECF No. 31-1.  Additionally, when asked whether the

United States could get Mr. Abrego Garcia—an El Salvadoran citizen—back from El

Salvador, President Trump responded, "I could."  Pet'r's Resp. to Am. Mot. to Dismiss

15.  The Court agrees with the D.C. District Court that such allegations are sufficient

to warrant discovery on the issue of custody.  *See J.G.G.*, 2025 WL 1349496, at *3

(finding petitioners' showing "adequate to justify further inquiry into the potential

basis for this Court's jurisdiction"); *see also Abu Ali*, 350 F. Supp. 2d at 67-69 (finding

allegations that petitioner's detention by Saudi Arabia was at the behest of the

United States sufficient to authorize discovery).

The Court finds unconvincing the various arguments put forth by Respondents

as to why discovery is unnecessary or inappropriate.  Respondents suggest the Court

does not have jurisdiction because it cannot command El Salvadoran officials with

physical custody of Petitioner to produce him.  Resp'ts' Reply 9.  However, the issue

is not whether the Court has jurisdiction over the warden of CECOT, or the ability to

issue orders to a foreign government, but whether the Court has jurisdiction over a

United States official with "the power to produce" Petitioner.[4]  *Munaf v. Geren*, 553

---

[4] The Court recognizes that the "default rule" for the "proper respondent is the warden of the facility where the petitioner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).  However, the default rule is not appropriate where the warden does not have the power to produce the petitioner in Court or answer the merits of the petition on behalf of the federal government.  *See Masingene v. Martin*, 424 F. Supp. 3d 1298, 1300-03 (S.D. Fla. 2020).  Instead, "when the petitioner and his immediate custodian are outside the territory of any district court . . . the petitioner may name as respondents any of his custodians (not just the immediate custodians) and may file the claim in the court that has jurisdiction over those respondents." *Abu Ali*, 350 F. Supp. 2d at 44 (internal quotation marks and citations omitted).  Further, even assuming the proper respondent is the individual with immediate custody, there is no dispute that Petitioner was in the immediate custody of the Warden of Stewart Detention Center when he filed his original petition.  "[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any

U.S. 674, 686 (2008). Depending on the terms of any agreement between the United States and El Salvador, that could very well be one of the Respondents. Further, as the United States Supreme Court recently clarified, "immediate physical release is not the only remedy under the federal writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S.--, 145 S.Ct. 1003, 1005 (2025). Here, in addition to immediate release from custody, Petitioner also requested an order that Respondents "facilitate" his release, Am. Pet. at 33, which—depending on the nature of the agreement between the United States and El Salvador—could very well constitute meaningful relief. *See Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113, at *4 (4th Cir. Apr. 7, 2025) (Thacker, J., concurring) (stating that "[t]he Government's claim that it can remove an individual from the United States pursuant to [an agreement with El Salvador] and thereby lose the ability to reclaim that individual and return him to the country for process (or for any other purpose) cannot stand," noting that "[r]equiring that the Government effectuate and facilitate Abrego Garcia's return is not a novel order," and that "[t]he Government can—and does—return wrongfully removed migrants as a matter of course" (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The Court also finds that Petitioner's citizenship is irrelevant to the issue at hand. Resp'ts' Reply 11. Certainly, courts have distinguished United States citizens from non-citizens when addressing whether constitutional habeas jurisdiction extended to petitioners apprehended and detained—usually by the military—oversees, but in none of those cases was it disputed that the petitioners were in

---

respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Padilla*, 542 U.S. at 441.

United States custody. *See, e.g.*, *Boumediene v. Bush*, 553 U.S. 723, 766 (2008) (listing citizenship as one factor in determining whether constitutional habeas protections applied to aliens detained as enemy combatants at the United States naval base at Guantanamo Bay, Cuba); *Johnson v. Eisentrager*, 339 U.S. 763, 766-67 (1950) (finding constitutional jurisdiction did not extend to German nationals taken into custody by the United States military in China but assuming that the respondents had lawful authority to release the petitioners); *Al Maqaleh v. Gates*, 605 F.3d 84, 87, 98 (D.C. Cir. 2010) (holding that constitutional habeas jurisdiction did not extend to non-citizens captured by the United States military oversees and detained at Bagram Airfield Military Base in Afghanistan). And "[28 U.S.C. § 2241] draws no distinction between Americans and aliens held in federal custody[.]" *Rasul v. Bush*, 542 U.S. 466, 481 (holding that habeas jurisdiction under 28 U.S.C. § 2241 extended to aliens detained at the United States naval base at Guantanamo Bay). Moreover, even when refusing to extend the constitutional right of habeas to aliens captured and detained overseas, the Supreme Court emphasized that the petitioners had never been in the United States and were captured and detained outside of the United States. *Johnson*, 339 U.S. at 777-78. Here, Petitioner was arrested and detained within the United States prior to his transfer to El Salvador. Flores Decl. ¶¶ 6, 8, ECF No. 10-1. In short, citizenship is irrelevant to whether a petitioner is in United States custody.

The Court also rejects Respondents' argument that various privileges bar discovery of the terms of the agreement between the United States and El Salvador

for the detention of alien detainees.  Resp'ts' Reply 13-14.  The only reason El Salvador has even entered the conversation in this case is because the Government sent Petitioner to El Salvador—Petitioner claims for the purpose of continued detention.  For Respondents to now assert that the terms of such relocation and potential detention should be shielded from Petitioner and the Court is disingenuous. That is not to say that the entire panoply of relations between the United States and El Salvador is open to discovery, but the narrow matter of the terms under which Petitioner is held in El Salvador, the degree to which the United States is entitled to determine his ultimate disposition, and what involvement, if any, the United States continues to have in seeking his possible eventual repatriation to Venezuela is discoverable.  To the extent any valid privilege exists, the Court can tailor discovery to accommodate it.

## III.    A Stay Pending Resolution of *D.V.D.* Is Not Appropriate

Respondents contend that the Court should dismiss or stay proceedings pending resolution of *D.V.D.* because Petitioner is a class member and "the potential for conflicting decisions on jurisdictional and discovery issues is real."  Resp'ts' Reply 2-3.  Further, they argue that the Court "should not order jurisdictional discovery where the issue such discovery would seek to resolve—the jurisdiction of this Court to order the relief Petitioner requests—will necessarily be resolved in the class action in which Petitioner is a mandatory member."  *Id.* at 6.

The Court disagrees that a stay of the case or of discovery is appropriate pending resolution of *D.V.D.*  While there is some overlap of the legal issues involved,

*D.V.D.* is not a habeas action and release from custody is not one of the remedies requested for those—like Petitioner—who were transferred to El Salvador without the opportunity to apply for protection under CAT prior to removal to a third country. Resp'ts' Ex. B, at 36-37, ECF No. 27-2.  Instead, the requested relief is return to the United States for such class members to apply for such protection.  *Id.* at 37.  As pointed out by Petitioner, "[r]esolution of *D.V.D.* will take many months or years given its complexity[.]"  Pet'r's Resp. to Am. Mot. to Dismiss 20.

In contrast, Petitioner's habeas petition is—at its core—a request for relief from prolonged post-final order of removal detention pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Am. Pet. ¶¶ 128-34.  The only—though obviously not insignificant—distinguishing feature of Petitioner's claim from any other *Zadvydas* claim is Respondents' insistence that Petitioner's detention, and hence need for a *Zadvydas* analysis, ended upon his transfer to El Salvador.  Thus, the scope of Petitioner's habeas claims are much narrower than those asserted in *D.V.D.*, and consequently the scope of discovery will be too.  Accordingly, staying proceedings or discovery in this case pending resolution of *D.V.D.* is not appropriate.

## IV.   **Discovery**

### A.   Scope of Discovery

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  However, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure" in a habeas proceeding.  Rule

6(a), Rules Governing Section 2254 Cases.[5]  If discovery is warranted, "Rule 6(a) makes it clear that the scope and extent of such discovery is a matter confided to the discretion of the District Court."  *Bracy*, 520 U.S. at 909.

> Under the Federal Rules of Civil Procedure:
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, . . . the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  The Court has applied this standard in evaluating Petitioner's requested discovery as set forth in their motion.  Pet'r's Mot. for Disc. 6-10.

Petitioner's requests for production 1-3 ask for documents directly related to the terms of any agreement between the United States and El Salvador to accept and detain non-United States citizens transferred from the United States to El Salvador and are relevant and proportional to the needs of the case.  Pet'r's Mot. for Disc. 6-7. Therefore, the Court will allow them.

Petitioner's request for production 4 asks for "[d]ocuments relating to [Petitioner's] transport or removal from the United States to El Salvador and to CECOT, including but not limited to flight manifests."  *Id.* at 7.  The Court finds this that request is relevant and proportional to the needs of the case and will allow it.

---

[5] The Rules Governing § 2254 Cases in the United States District Courts are applicable to petitions brought under 28 U.S.C. § 2241.  *Annamalai v. Warden*, 760 F. App'x 843, 849-50 (11th Cir. 2019) (citing Rule 1(b), Rules Governing Section 2254 Cases).

Petitioner's request for production 5 asks for documents related to "[Petitioner's] confinement between February 10, 2025, and the present, including documents specifying his location of confinement, conditions of confinement, the legal basis for his confinement, the anticipated length of his confinement at CECOT, and his custodial status." *Id.* The Court concludes that this is relevant and proportional to the needs of the case and will allow it.

Petitioner's request for production 6 asks for "[a]ny documents provided to or signed by [Petitioner] within 72 hours prior to or within 72 hours after completion of his transport or removal to El Salvador." *Id.* This is relevant to what information may have been conveyed to Petitioner regarding the terms or duration of his confinement in El Salvador, is proportional to the needs of the case, and will be allowed.

Petitioner's request for production 7 asks for "[a]ll communications to or from anyone in the government of El Salvador or connected with CECOT concerning [Petitioner]." *Id.* This is directly relevant to the terms of Petitioner's confinement in El Salvador and the issue of custody, proportional to the needs of the case, and will be allowed.

Petitioner's request for production 8 asks for "[a]ll documents sufficient to show Respondents' compliance with the 2011 Performance Based National Detention Standards, 2016 revision Sections 2.1(V)(I) ("Releases or Removals"), 4.3(V)(Z) ("Continuity of Care"), and 4.3(V)(BB) ("Medical Records"), as to [Petitioner's] 'removal' to El Salvador." *Id.* The Court concludes this is not relevant or proportional

to the issue of jurisdiction, so it will not be allowed.

Petitioner's request for production number 9 asks for documents related to "Respondent Noem's March 26, 2025 visit to CECOT, including correspondence, agreements, agendas, notes, photographs, and video footage."   Pet'r's Mot. for Disc. 7.  To the extent this request seeks information about any agreement between the United States and El Salvador regarding the acceptance of non-United States citizens and/or their detention, that information is encompassed by other discovery requests. Further, much of this information is publicly available.  Otherwise, this request appears overly broad and irrelevant to the issue of jurisdiction.  It will not be allowed.

Petitioner's request for production number 10 asks for documents "relating to policies or directives regarding the process for identifying non-U.S. citizens for removal or transfer to CECOT and effectuating removals or transfers to CECOT."  *Id.* at 7-8.  This request is vague, overly broad, and appears to seek information not directly related to the issue of jurisdiction over Petitioner's habeas petition. Therefore, it will not be allowed.

Petitioner's request for production 11 asks for "[a]ll documents Respondents may rely on to support their defenses or arguments that this Court does not have jurisdiction over [Petitioner's] habeas petition."  *Id.* at 8.   Respondents do not specifically object to this request, and obviously, if they are going to rely on a particular document to demonstrate the Court's lack of jurisdiction, it will need to be produced.  Therefore, the Court will allow this request.

Petitioner's interrogatory 1 asks for "[t]he flight numbers, dates, and times of

the flights on which [Petitioner] was transported from the United States to El Salvador." *Id.* This is similar to request for production number 4, and the Court will allow it.

Petitioner's interrogatories 2-6 seek the "names of all Executive Branch officials responsible for [Petitioner's] transfer to CECOT," "who identified [Petitioner] for transfer to CECOT," "communicated with Salvadoran government officials about the location of, custodial status of, or health and safety of non-U.S. citizens transferred to CECOT," have "knowledge of the agreement, arrangement, or understanding between the United States and El Salvador for the confinement of non-U.S. citizens sent from the United States to CECOT," or have "authority to negotiate with El Salvador regarding the confinement of non-U.S. citizens sent from the United States to Salvadoran prisons and to renew or extend the term of the agreement for El Salvador to detain non-U.S. citizens sent from the United States to Salvadoran prisons." *Id.* The Court agrees with Respondents that these interrogatories are overbroad. Therefore, they will not be allowed. The Court notes that it will allow Petitioner to conduct Rule 30(b)(6) depositions to obtain information from a representative of the Executive Branch who will be expected to provide the information authorized by this Order.

Petitioner's interrogatories 7-8 ask for "[a] description with particularity of the terms of any agreement, arrangement, or understanding between the governments of the United States and El Salvador to confine in El Salvador non-U.S. citizens sent from the United States or transported from the United States to El Salvador" and "[a]

list of each payment that has been, or will be, made or withheld in connection with the detention in El Salvador of [Petitioner] and other non-U.S. citizens sent from the United States to El Salvador, including when each payment was or will be made or withheld, in what amount, by whom, and to whom." *Id.* at 8-9. These interrogatories are directly relevant to the terms of Petitioner's confinement in El Salvador and the issue of custody, proportional to the needs of the case, and will be allowed. However, the Court limits interrogatory 8 to information regarding the payment(s) made for Petitioner's detention—not other non-citizens—in whatever form that payment was made. To be clear, Petitioner is entitled to this information even if, for example, the payment is made in a lump sum and also covers other non-citizens.

Petitioner's requests for admission 1-3 ask Respondents to "admit that Respondents or their agents, employees, subordinates, or contractors transported [Petitioner] to El Salvador on March 15, 2025," "Respondents or their agents, employees, subordinates, or contractors transported [Petitioner] to CECOT," and "[Petitioner] is currently confined at CECOT." Pet'r's Mot. for Disc. 9. The Court concludes that these requests are relevant and proportional to the needs of the case and will allow them.

Petitioners also request an order allowing Rule 30(b)(6) depositions not to exceed seven hours each of DHS/ICE and the State Department regarding the topics of:

> [1] any agreement(s) between the United States and El Salvador to detain non-U.S. citizens sent from the United States to Salvadoran prisons; [2] the agencies' knowledge of facts related to [Petitioner's] present detention in El Salvador; [3] the agencies' knowledge of the

conditions of confinement, custodial status, legal basis for confinement, length of confinement, and release or return of non-U.S. citizens sent from the United States to Salvadoran prisons; [4] agency policies and procedures relating to the detention of non-U.S. citizens in Salvadoran prisons; [5] the agencies' decision to send [Petitioner] to El Salvador and to CECOT; [6] and agency policies and procedures relating to the identification of non-U.S. citizens for third-country removals and removals to Salvadoran prisons.

*Id.* at 9-10 (enumeration added by the Court).  With the exception of topic number 6, the Court concludes these topics are relevant and proportional to the needs of the case and will be allowed.

Finally, Petitioner requests permission to conduct up to two additional depositions of individuals disclosed in Respondents' discovery requests.  *Id.* 10.  The Court will defer ruling on this request until such time as Petitioner has identified the proposed deponents and Respondents have had the opportunity to respond.

B.    Discovery Schedule

Petitioner requests a discovery schedule as follows:

[1] responses, objections, production of a privilege log, and production of responsive documents provided to [Petitioner's] requests for production, interrogatories, and requests for admission within one week of entry of an order permitting discovery; [2] depositions completed within two weeks of service of notice; [3] and any motion to compel regarding requests for production, interrogatories or requests for admission filed within two weeks of entry of an order permitting discovery, with any response due one week after filing of the motion, and production of any remaining discovery made one week after entry of the Court's order resolving the motion.

*Id.* at 10 (enumeration added by the Court).  This schedule is consistent with discovery entered in other cases concerning the shipment of aliens to El Salvador. *See Abrego Garcia v. Noem*, No. 8:25-cv-951-PX (D. Md. Apr. 15, 2025), ECF No. 79;

*J.G.G. v. Trump*, No. 1:25-cv-766-JEB (D.D.C. May 16, 2025), ECF No. 128. The Court is not persuaded by Respondents' contention that the proposed timeline is unreasonable. Because much of this discovery is similar to requests made in other cases, Respondents have likely already gathered much of the information.

Therefore, the Court orders discovery according to the following timeline:

1.    Within twenty-four hours of the date of this Order, Petitioner shall serve the discovery requests as approved herein by the Court on Respondents;

2.    Within one week of the service of Petitioner's discovery requests, Respondents shall serve their responses;

3.    Depositions shall be completed within two weeks of service of notice of the deposition;

4.    Any motion to compel regarding requests for production, interrogatories or requests for admission shall be filed within two weeks of the date of this Order, with any response due one week after filing of the motion, and production of any remaining discovery made one week after entry of the Court's order resolving the motion; and

5.    Respondents shall promptly supplement their discovery responses with any further responsive information or documents as they discover new evidence.

## CONCLUSION

For the reasons explained above, Petitioner's motion for expedited jurisdictional discovery (ECF No. 28) is granted. Discovery shall proceed on the

schedule directly above and with the limits articulated in this Order.  The Court defers ruling on Respondents' motion to dismiss (ECF No. 27) until completion of expedited jurisdictional discovery.  The Court anticipates that additional briefing on the jurisdictional issue will be necessary but will address that in a separate order at a later date.  The parties may consult on a desired briefing schedule and submit a proposed join schedule for consideration by the Court within fourteen days.

        **SO ORDERED**, this 3rd day of June, 2025.

                                          s/ *Amelia G. Helmick*
                                          UNITED STATES MAGISTRATE JUDGE