IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| E.D.Q.C., | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Case No. 4:25-cv-50-CDL-AGH |
| | : | 28 U.S.C. § 2241 |
| Warden, STEWART DETENTION CENTER, *et al.*, | : | |
| | : | |
| Respondents. | : | |

# ORDER

Before the Court is Respondents' motion for a stay or reconsideration (ECF No. 37) of the Court's June 3, 2025 Order (ECF No. 36) granting Petitioner's motion for expedited jurisdictional discovery (ECF No. 28). For the reasons stated below, Respondents' motion for reconsideration is denied, but the Court will stay commencement of discovery pending Respondents' appeal to the district judge.

## BACKGROUND

The Court received Petitioner's *pro se* petition for a writ of habeas corpus on February 10, 2025 (ECF No. 1). At the time Petitioner filed his petition, he was detained at Stewart Detention Center ("SDC") in Lumpkin, Georgia. Pet. 1, ECF No. 1. On March 20, 2025, the Warden/Respondent moved to dismiss the petition, contending that Petitioner—a Venezuelan citizen—was removed to El Salvador on March 15, 2025, and therefore, his petition was moot. Resp't's Mot. to Dismiss 2, ECF No. 10. After the Court appointed counsel, Petitioner filed an amended petition (ECF

No. 27), and on May 5, 2025, moved for expedited jurisdictional discovery to address whether Petitioner remains in Respondents' custody and whether the Court can provide meaningful relief on his petition. Pet'r's Mot. for Disc. 3, ECF No 28. Respondents filed a combined reply to the motion to dismiss and opposition to jurisdictional discovery on May 15, 2025 (ECF No. 32). On June 3, 2025, the Court granted Petitioner's motion for expedited jurisdictional discovery, though it limited the scope of the discovery requested by Petitioner. Order 21-22, ECF No. 36.

On June 6, 2025, Respondents moved to stay the Court's discovery order pending an appeal to the district judge, or for reconsideration. Resp'ts' Mot. for Stay or Recons. 2-4, ECF No. 37. In support of the motion, Respondents cited an opinion by the United States District Court for the District of Columbia that found the evidence in "the current record" insufficient to show that Venezuelan noncitizens detained in the Centro de Confinamiento del Terrorismo, The Terrorism Confinement Center ("CECOT") in Tecoluca, El Salvador, were in the constructive custody of the United States. *Id.* at 3 (citing *J.G.G. v. Trump* ("*J.G.G. II*"), -- F. Supp. 3d -- , No. 25-766 (JEB), 2025 WL 1577811, at *11 (D.D.C. June 4, 2025)). Respondents contended that—"[t]o the extent that this Court believes that any discovery is warranted here"—the Court should first order production of the discovery produced by the Government and relied upon by the district court in *J.G.G.* *Id.* at 4.

In response to Respondents' motion for a stay or reconsideration, the Court noted its inclination to "limit discovery at this time" to the Petitioner's immigration file and the documents produced in *J.G.G.* Order, June 6, 2025, ECF No. 38.

2

Therefore, the Court ordered the parties to consult and file a status report with the Court. *Id.* Pursuant to the parties' joint status report (ECF No. 39), the Court ordered Respondents to produce and file under seal the *J.G.G.* documents and allowed Petitioner—if he determined that further jurisdictional discovery was warranted— through and including June 19, 2025, to respond to Respondents' motion for reconsideration. Order 1, June 9, 2025, ECF No. 40. On June 13, 2025, Respondents' submitted the *J.G.G.* documents under seal (ECF No. 45), including a declaration (ECF No. 45-21) by Michael G. Kozak, a Senior Bureau Official within the Bureau of Western Hemisphere Affairs of the Department of State. On June 19, 2025, Petitioner filed a response (ECF No 53) opposing Respondents' motion for reconsideration. Respondents timely replied (ECF No. 55).

## DISCUSSION

### I. Motion for Reconsideration Standard

Under Local Rule 7.6, "[m]otions for [r]econsideration shall not be filed as a matter of routine practice." M.D. Ga. L.R. 7.6. "A motion for reconsideration serves a narrow purpose, primarily to correct manifest errors of law or fact or to present newly discovered evidence that could not have been discovered at the time of the original motion." *Robinson v. Philbin*, No. 4:19-CV-209-CDL-MSH, 2020 WL 13976912, at *1 (M.D. Ga. Feb. 5, 2020) (internal quotation marks omitted). "Reconsideration is thus appropriate only if the movant demonstrates that: (1) there has been an intervening change in the law, (2) new evidence has been discovered that was not previously available to the parties at the time the original order was entered,

3

or (3) reconsideration is necessary to correct a clear error of law or prevent manifest injustice." *Id.* (internal quotation marks omitted).

## II. Further Jurisdictional Discovery Is Warranted

### A. Respondents Do Not Satisfy the Standard for Reconsideration

Initially, the Court finds that Respondents fail to show reconsideration is warranted. There has been no intervening change in the law which restricts the Court's authority to order discovery. Granted, the district court in *J.G.G.* concluded that the record did not support a finding of constructive custody after its review of the discovery produced by the Government. *J.G.G. II*, 2025 WL 1577811, at *11. However, the Court is obviously not bound by the D.C. district court's decision, and in any case, the district court's finding does not contradict its earlier ruling that jurisdictional discovery was warranted in light of the showing made by the petitioners in that case.[1]  *J.G.G. v. Trump* ("*J.G.G. I*"), No. 25-766 (JEB), -- F. Supp. 3d -- , 2025 WL 1349496, at *3 (D.D.C. May 8, 2025). Moreover, the district court issued its ruling despite a dispute over the sufficiency of the Government's discovery responses, and under the presumption that the declaration of Government officials are "conclusive

---

[1] The D.C. district court concluded that—"while it is a close question"—after reviewing the material produced by the Government, it "appear[s] to show that . . . the ongoing detention of the CECOT class is not solely at the 'behest' of the United States, nor is El Salvador 'indifferent' to their detention." *J.G.G. II*, 2025 WL 1577811, at *11 (quoting *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 68 (D.D.C. 2004)). Instead, the district court found that "the picture that emerges from the current record is that El Salvador has chosen—in negotiation with the United States and for reasons far outside the ken of a federal district court—to detain Plaintiffs at CECOT, and it can choose to release them as well." For the reasons explained herein, the Court disagrees with the D.C. district court's findings. Moreover, the Court does not agree that absolute dominion over the detainees is necessary for constructive custody or for the Court to be able to provide meaningful relief. Again, "immediate physical release is not the only remedy under the federal writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. --, 145 S. Ct. 1003, 1005 (2025). An order to facilitate Petitioner's return could provide meaningful relief, as arguably demonstrated by the recent return to the United States of Mr. Abrego Garcia. *See* Pet'r's Resp. to Mot. for Stay or Recons. 11, ECF No. 53.

on the question whether ongoing detention is 'on behalf of the United States.'" *J.G.G. II*, 2025 WL 1577811, at *11 (quoting *Kiyemba v. Obama*, 561 F.3d 509, 515 (D.C. Cir. 2009)). The Court does not agree that allowing Respondents to cherry-pick evidence and produce only that which they deem helpful to them is consistent with Petitioner's entitlement to jurisdictional discovery or that Kozak's equivocal declaration warrants a presumption that the United States has no constructive custody of Petitioner. *See Am. Civil Liberties Union of Fla. v. City of Sarasota*, 859 F.3d 1337, 1340-41 (11th Cir. 2017) (reversing district court for not allowing plaintiffs jurisdictional discovery); *J.G.G. II*, 2025 WL 1577811, at *12 (comparing the unequivocal declarations presented in past cases with that of Kozak).

Further, the *J.G.G.* material does not constitute "new evidence" that was not available to the parties when the Court entered its order. The Government produced the material to the *J.G.G.* petitioners on May 23, 2025, which was prior to the Court's June 3, 2025 Order, and Kozak signed his declaration on May 9, 2025, which was six days before Respondents' response (ECF No. 32) to Petitioner's motion for discovery. Resp'ts' Ex. 2, ECF No. 45-2; Resp'ts' Ex. 21, at 5, ECF No. 45-21. Only after the D.C. district court rendered an opinion in the Government's favor on the issue of constructive custody did Respondents' offer to produce the material.

Finally, Respondents have not shown that "reconsideration is necessary to correct a clear error of law or prevent manifest injustice." *Robinson*, 2020 WL 13976912, at *1.

5

B.     The *J.G.G.* Material Does Not Resolve the Issue of Constructive Custody

Despite Respondents' failure to show entitlement to reconsideration, the Court agreed to allow an initial production of the *J.G.G.* material with the expectation that it would shed some light on the issue of constructive custody. However, the material presented raises more questions than it answers. First, none of the *J.G.G.* material deals specifically with Petitioner, including documentation about his transfer and detention in El Salvador. Second, as discussed below, the documentation does not resolve the degree, if any, that the United States retains control over aliens such as Petitioner.

Respondents rely primarily ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ the Kozak declaration. However, while ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ an agreement by El Salvador to accept alien detainees from the United States, ▇▇▇▇▇▇▇▇▇▇▇▇ consistent with a mere detention agreement as opposed to an agreement to accept full custody and control.[2] In fact, ▇▇▇▇▇▇ El Salvador's agreement ▇▇▇▇▇▇▇▇▇▇ is more consistent with a detention agreement than surrender of custody. Resp'ts' Ex. 10, ECF No. 45-10; Resp'ts' Ex. 11, at 1, ECF No. 45-11; Resp'ts' Ex. 20, at 1, ECF No. 45-20. True, the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, but that acknowledgment does not contradict the United

---

[2] With the exception of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, the agreement ▇▇▇ covers members of Tren de Aragua ("TdA"). Resp'ts' Ex. 9, at 1, ECF No. 45-9. In their most recent filing, Respondents assert that Petitioner is a member of TdA, which Petitioner denies. Resp'ts' Reply 4, ECF No. 55; Pet'r's Resp. to Mot. for Stay or Recons. 7 n.4.

6

States having constructive custody. Presumably, the United States would require any detention facility to comply with applicable local and international law. None of the documents produced by Respondents demonstrate relinquishment of control by the United States over the final disposition of the detainees or El Salvador's unfettered right to release them from custody. If the purpose of these documents was to demonstrate such outcomes, it would not have been difficult to explicitly say so.

Kozak's declaration does not add clarity. He relies on █████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████ Kozak states ██████ ████████████████████████████████████████████████████ ████████████████████████████ ██ According to Kozak, ███ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████ *Id.* Kozak avers that ██████████████████████ ████████████████████████████████████████████████████ ████████████████ *Id.* In response, ██████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████ █ Respondents have not produced ████████ ████████████████████████████████, relying entirely on Kozak's description ████

7

███████.

Accepting that Kozak's account of the ████████████████████ is accurate, it raises more questions than it answers. ████████████████████ ████████████ leaves the issue of ultimate control over the alien detainees murky since ████████████████████████████████████████████████ Further, in contrast to demonstrating a clear agreement between the United States over custody and control, ████████████████████████ ████████████████████████████████ Other documentation ████ ████████████████████████████████████ and Petitioner's transfer to CECOT—similarly suggests that ████████████████████████████████████ ████████████████████████████████. Resp'ts' Ex. 7, ECF No. 45-7. The bottom line is that if the United States had intended to wash its hands of responsibility for the alien detainees sent to El Salvador, it could have clearly and explicitly done so in its agreement with El Salvador. But nothing Respondents have produced demonstrates that such agreement was reached.

Moreover, Kozak's ambiguous declaration cannot substitute for meaningful discovery. The most that he can say is that "[i]t was and remains my understanding that the detention and ultimate disposition of those detained in CECOT and other Salvador detention facilities are matters within the legal authority of El Salvador in accordance with domestic and international obligations." Kozak Decl. ¶ 9. His "understanding" is hardly equivalent to an official declaration as to the aliens' status. His efforts to solidify his declaration by referring to a "public proposal" by the El

Salvadoran president to exchange the TdA members for Venezuelan political hostages and the fact that certain members of Congress were prevented from visiting CECOT detainees only undermines his position, giving the impression that his declaration about the status of the alien detainees is more of an opinion based upon a review of the record as opposed to intimate knowledge of the aliens' legal status vis-à-vis the United States. *Id.* ¶¶ 9-10. In any event, Kozak's declaration is contradicted by other public statements by both American and El Salvadoran officials that point to continued United States control over the aliens. *See* Order 9-10, June 3, 2025. At most, Kozak's declaration is a piece of evidence to weigh after the completion of discovery to determine the issue of constructive custody.

Petitioner's discovery requests seek to flesh out the exact terms of the agreement between the United States and El Salvador by obtaining information about the apparently robust diplomatic communications underlying the countries' arrangement (ECF Nos. 53-2, 53-3, 53-4, 53-5, 53-6). ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████ Considering the unclear nature of the agreement from the documents produced thus far, such discovery is justifiable and necessary.

Respondents' expressed objection to the Court delving into "highly sensitive details about the conduct of foreign relations" is unfounded. Resp'ts' Mot. for Stay or Recons. 2. Respondents are not being told to reveal the entire corpus of diplomatic

9

exchanges between the United States and El Salvador, but only a very small crumb of information: the specific terms of the agreement between the nations for acceptance of alien detainees and specific information about Petitioner's transfer and detention at CECOT. To the extent any documents delve into other subjects, Respondents are entitled to redact them and produce a privilege log. Even the full scope of consideration or other inducements for El Salvador's acceptance of the aliens need not be revealed if it touches on sensitive diplomatic matters—as long as the rights, responsibilities, and obligations regarding the aliens arising from such consideration is produced. In other words, any concern about Court overreach into the Executive Branch's conduct of foreign relations can be appropriately addressed through redaction, protective orders, and rulings on particular privilege objections.

As this Court has previously explained, "Respondents have demonstrated their intention to test the constitutional limits of Executive power, which is certainly their right; but the Court has the responsibility to assure that unrestrained zeal does not include gaming the system in a manner that deprives an individual of constitutional protections that were established by our wise founders and preserved by subsequent brave patriots." *Y.A.P.A. v. Trump*, -- F. Supp. 3d -- , 2025 WL 1454014, at *5 (M.D. Ga. May 21, 2025). It may be that after further discovery, the exact nature of the agreement between the United States and El Salvador is no clearer than it is now or the evidence may show that Respondents are correct in their assertion that the United States maintains no control over detainees like Petitioner. But that cannot be known until after discovery, and it is a bridge that can be traversed at that time.

Accordingly, to the extent Respondents' request the Court to reconsider its June 3, 2025 Order (ECF No. 36), their motion is **DENIED**.  Nevertheless, the Court will stay discovery for a period of fourteen (14) days to allow Respondents to appeal this Order to the district judge pursuant to Rule 72(a) of the Federal Rules of Civil Procedure.  If Respondents do not timely appeal, the Court will order commencement of discovery consistent with the Court's earlier schedule.  *See* Order 21, June 3, 2025.  If Respondents do timely appeal, discovery shall remain stayed pending a ruling by the district judge.[3]

    **SO ORDERED**, this 2nd day of July, 2025.

                                                  s/ *Amelia G. Helmick*
                                                UNITED STATES MAGISTRATE JUDGE

---

[3] Out of an abundance of caution, the Court is initially filing this Order under restricted access because it cites material filed under seal pursuant to a protective order.  However, the Court does not believe the material cited or quoted in this Order is not otherwise generally available in the public sphere such that it needs be redacted.  The parties shall have until **4:00 p.m. today, July 2, 2025**, to provide notice and argument to the Court regarding whether statements or portions of this Order should be redacted.  If, upon review of the Order, the parties agree that no redactions are necessary, the parties shall notify the Court as soon as possible so that the Order may be made public.  If the Court receives no notice from any party regarding redactions, the Court intends to file the Order at 5:00 p.m. today, July 2, 2025.